## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ANIL KANCHARLA, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **Civil Action No.:** |
| **v.** | § | |
| | § | **1:25-CV-02346-RDM** |
| **FEDERAL NATIONAL MORTGAGE** | § | |
| **ASSOCIATION,** | § | |
| | § | |
| **Defendant.** | § | |

## DEFENDANT FEDERAL NATIONAL MORTGAGE ASSOCIATION'S MOTION TO COMPEL ARBITRATION AND DISMISS THIS ACTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Defendant Federal National Mortgage Association ("Fannie Mae" or "Defendant") respectfully moves the Court to compel arbitration of the Plaintiffs' claims pursuant to the Federal Arbitration Act and to dismiss this action.

## I.    INTRODUCTION

Sixty-five former Fannie Mae employees commenced this lawsuit on July 21, 2025, asserting causes of action for discrimination and breach of contract related to the termination of their at-will employment. Dkt. 1 (Compl.). As Fannie Mae has explained, however, each of the Plaintiffs is subject to an agreement to resolve the disputes asserted in the Complaint in binding arbitration. *See* Dkt. 5 (Motion at 1-2). On September 17, 2025, 21 of the Individual Plaintiffs voluntarily dismissed their claims. *See* Dkt. 10 (Notice of Voluntary Dismissal). Fannie Mae now respectfully moves this Court to compel arbitration of the claims of the remaining 44 Plaintiffs.[1]

---

[1] Fannie Mae does not waive any right, defense, or objection to any claim asserted by the Plaintiffs, and expressly reserves the right to assert all such rights, defenses, and objections. Fannie Mae simply asserts that arbitration, rather than this litigation, is the proper forum for resolving Plaintiffs' claims.

## II.    STATEMENT OF FACTS

Fannie Mae employees have been required to arbitrate employment-related claims as a condition of their Fannie Mae employment since the company first implemented a mutual arbitration program in 1988. Ex. 1 at 1, ¶ 3 (Decl. of Karl Johnson). On January 21, 2015, Fannie Mae's then-chief of Human Resources, Brian McQuaid, sent an email to all employees, advising them of updates to its arbitration program that would become effective on April 20, 2015.[2] Ex. 1 at 2, ¶ 6; Ex. 1 at 6 (Ex. A).[3] Mr. McQuaid's email summarized key changes to the program and attached a copy of the updated Arbitration Agreement (the "2015 Agreement"). *Id.*; Ex. 1 at 6 (Ex. A). Mr. McQuaid advised employees that the 2015 Agreement would "automatically apply to Fannie Mae and to all employees who are employed on that date," i.e., April 20, 2015. Ex. 1 at 6. This echoed language in the Introductory paragraph of the 2015 Agreement itself:

> This Arbitration Agreement ("the "Agreement") between you (the "Employee") and Fannie Mae (collectively, the "parties") provides for final and binding arbitration of employment-related disputes. This Agreement sets forth the process by which any employment-related disputes between the parties are to be resolved, and also identifies the parties' rights and obligations associated with final and binding arbitration.

*Id.* at 7. The 2015 Agreement specifically noted in Paragraph 1, "You and Fannie Mae agree to resolve all claims covered by this Agreement ... through final and binding arbitration." *Id.* at ¶ 1. The 2015 Agreement also conspicuously identified its April 20, 2015, "Effective Date," noting in

---

[2] On January 21, 2015, Fannie Mae also sent to all employees and published on its intranet an article concerning the updated Arbitration Agreement and the request that all employees certify receipt and understanding the Agreement would apply to them. Ex. 1 at 2, ¶ 10; Ex. 1 at 14-15 (Ex. B). The article included a link to an "FAQ document" that provided answers to potential questions about the updated Arbitration Agreement and told employees who to contact with questions or for additional information. *Id.*

[3] Pursuant to this Court's Standing Order for Civil Cases ¶ 14, Fannie Mae has filed three declarations in support of this motion as "separate exhibits" numbered 1, 2, and 3, and has cited to the PDF page numbers of each exhibit. Each of Exhibits 1, 2, and 3 also has attached to it (and made part of the same PDF) one or more documents labeled as Ex. A, Ex. B, etc.

bold, "**By continuing to work for Fannie Mae and being employed on that date ['April 20, 2015'], you accept this Agreement, which is a condition of employment.**" *Id.* at ¶ 2(b) (emphasis original).

Mr. McQuaid's email directed employees to click on a link to certify their receipt of the 2015 Agreement. Ex. 1 at 2, ¶ 7; Ex. 1 at 6 (Ex. A). In addition to certifying receipt, employees clicking on the link certified their understanding that "the Mutual Arbitration Agreement will apply to me if I continue to work at Fannie Mae and am employed by Fannie Mae on April 20 2015." Ex. 1 at 2-3, ¶¶ 7-8, 13-14; Ex. 1 at 17-103 (Ex. C). Each of the forty-four Plaintiffs remaining in this case answered "Yes" to the requested certifications before April 20, 2015.[4] *Id.*; *see also* Ex. 3 (Decl. of Joshua Daughtry & Ex. A).

### III.    STATEMENT OF POINTS AND AUTHORITIES

**A.    Arbitration Is Favored Where a Valid Agreement Exists.**

The Federal Arbitration Act codifies a strong public policy in favor of arbitrating disputes and the enforcement of arbitration agreements. 9 U.S.C. § 2; *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987). "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Motions to compel arbitration are evaluated under the summary judgment standard of Federal Rule of Civil Procedure 56, with review focused on "whether or not there [was] a meeting of the minds on the agreement to arbitrate." *Aliron Int'l, Inc. v. Cherokee Nation Indus.*, 531 F.3d

---

[4] Eight (8) of the Plaintiffs subsequently accepted offers to transfer to new roles and electronically executed offer letters that stated, "You also remain subject to your Arbitration Agreement with Fannie Mae ...." Ex. 2 at 1-2, ¶¶ 3-5 (Decl. of Megan M. Joseph); Ex. 2 at 4-15 (Ex. A).

863, 865 (D.C. Cir. 2008). In deciding this question, courts consider: (1) whether there is a valid agreement to arbitrate, and (2) whether the dispute falls within the scope of the agreement. *Johns v. Newsmax Media, Inc.,* 887 F. Supp. 2d 90, 97 (D.D.C. 2012). In this case, both questions are answered affirmatively with respect to the Plaintiffs. Their claims therefore should be compelled to arbitration and this case dismissed.

**B.    Plaintiffs Entered Into Valid Arbitration Agreements with Fannie Mae.**

**1.    Each Plaintiff entered into a valid arbitration agreement.**

The ultimate issue in assessing whether the parties arrived at a "meeting of the minds" is whether the parties demonstrated an intent to be bound contractually. *Duffy v. Duffy*, 881 A.2d 630, 636-37 (D.C. 2005). That intent can be demonstrated by the conduct of the parties. *Davis v. Winfield*, 664 A.2d 836, 838 (D.C. 1995). In this case, the parties' conduct shows an understanding and intent to be bound by the Arbitration Agreement.

Each of the 44 remaining Plaintiffs received the January 21, 2015 email that notified them of the terms of Fannie Mae's updated arbitration program. Each clicked on the link to confirm their receipt of the updated 2015 Agreement. And each responded "yes" to both the "certification" and "understanding" questions prior to the effective date of the 2015 Agreement. Ex. 1 at 2-3, ¶¶ 7-8, 13-14; Ex. 1 at 17-104 (Ex. C). Each of the 44 Plaintiffs remained employed on April 20, 2015. Dkt. 1 (Compl. ¶ 6). Through their actions, each of the 44 Plaintiffs affirmatively indicated their intent to be bound by the terms of the Arbitration Agreement. *Apprio Inc. v Zaccari*, 104 F.4th 897, 908 (D.C. Cir. 2024) ("the law is clear that the word 'accept' is not necessary to the formation of a contract"); *Martin v. Citibank, Inc.*, 567 F.Supp.2d 36, 43 (D.D.C. 2008) (plaintiff's signature noting she understood handbook contained a provision requiring her to arbitrate established agreement). The process Fannie Mae used to obtain Plaintiffs' assent to the 2015 Arbitration Agreement has previously been upheld by a federal court and a D.C. Superior Court.

*See Cowsette v. Fannie Mae*, No. 2016, 2016 WL 11640103, *2 (N.D. Tex. Nov. 30, 2016)

*adopting in relevant part Cowsette v. Fannie Mae*, No. 3:16-cv-2430-L, 2016 WL 11640104, *3-

5 (N.D. Tex. Oct. 27, 2016); *Manausa v. Fannie Mae, et al.*, Case No. 2016 CA 008842 B, pp. 3-

5 (D.C. Super. Ct., July 13, 2017) (attached).

> **2.      These disputes fall within the scope of the 2015 Agreement.**

Plaintiffs' claims in this litigation are "Covered Claims" subject to arbitration under the

terms of the 2015 Agreement. Specifically, the 2015 Agreement provides:

> Except as expressly set out in Sections 5 and 6, you and Fannie Mae agree that any
> and all controversies, disputes, and/or claims asserted after the Effective Date that
> directly or indirectly arise out of, or relate to, your employment, terms or conditions
> of your employment, ***or termination of employment***, whether based on federal,
> state, and/or local laws ("Covered Claims"), shall be resolved by final and binding
> arbitration pursuant to this Agreement.

Ex. 1 at 2, ¶ 6 (emphasis added).

In their Complaint, Plaintiffs purport to assert claims for "discrimination in employment"

and, in the alternative, for breach of contract relating to "the termination of their employment."

Dkt. 1 (Compl. ¶¶ 2-4). There is no question that these fall within the scope of Paragraph 3 of the

2015 Agreement. *See, e.g., Nur. V. K.F.C., USA, Inc*., 142 F. Supp. 2d 48, 51 (D.D.C. 2001)

(claims for wrongful discharge and discrimination arise out of or relate to employment); *see also*

*Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 35 (1991) (enforcing arbitration of age

discrimination claim); *Vanholten v. Sunrise Senior Living,* No. 5:20-CV-550-FL, 2021 WL

2446180, *7 (E.D. N.C. June 15, 2021) (claims for discrimination, wrongful termination, and

retaliation were within scope of dispute resolution agreement for claims related to employment or

its termination). As a result, Plaintiff's claims against Fannie Mae should be compelled to

arbitration under the terms of the 2015 Agreement.

## IV.    CONCLUSION

The Federal Arbitration Act mandates that parties honor their agreements and obligations to arbitrate, and both the Supreme Court and courts in this Circuit have recognized the need for rigorous enforcement of this mandate. Plaintiffs here have agreed to arbitrate the claims they assert in this lawsuit, and the claims fall within the scope of the 2015 Agreement. For the foregoing reasons, Fannie Mae respectfully requests that this Court compel arbitration of Plaintiff's claims against Fannie Mae and dismiss this proceeding. Fannie Mae further requests any further relief to which the Court deems it is justly entitled.

Respectfully submitted,

/s/ Ken Carroll
Ken Carroll
  DC Bar No. 347435
  Texas Bar No. 03888500
  kcarroll@ccsb.com
Carrington, Coleman,
  Sloman & Blumenthal, LLP
901 Main Street, Suite 5500
Dallas, Texas 75202
(214) 855-3000 – Phone
(214) 580-2641 – Fax

/s/ Angelina LaPenotiere
Angelina LaPenotiere
  (Admitted *Pro Hac Vice*)
  Texas Bar No. 24007530
  angelina_lapenotiere@fanniemae.com
  Granite Park VII
  5600 Granite Park
  Plano, Texas 75024
  (972) 656-8033 - Phone

**Attorneys for Defendant Federal National Mortgage Association ("Fannie Mae")**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 23, 2025, I served the Kancharla Plaintiffs, through their attorney, Milton Johns, with a copy of this document, Federal National Mortgage Association's Motion to Compel Arbitration and Dismiss This Action and Memorandum of Points and Authorities, via this Court's ECF system.

<u>/s/ Angelina LaPenotiere</u>
Angelina LaPenotiere

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| NEIL MANAUSA, ) | |
|        **Plaintiff,** ) | |
| ) | **Case No.: 2016 CA 008842 B** |
| **v.** ) | **Calendar 8** |
| ) | **Judge William M. Jackson** |
| ) | **Status Hearing: 7/14/17** |
| **FANNIE MAE, ET AL** ) | |
|        **Defendants.** ) | |

## ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION

This matter is before the Court on Defendant's Motion to Compel Arbitration, filed January 18, 2017. Plaintiff filed Opposition on February 1, 2017. Defendant filed a reply Memorandum in Support of Its Motion to Compel Arbitration. For the reasons stated below, Defendant's Motion is granted.

On December 17, 2016, Plaintiff Neil Manausa ("Plaintiff") filed a Complaint for Breach of Contract, Breach of the Duty of Good Faith and Fair Dealing, Tortious Interference with a Business Relationship, and Violation of the D.C. Human Rights Laws, D.C. Code § 2-140101, et seq., against Federal National Mortgage Association ("Fannie Mae"), as well as three Fannie Mae employees, Elizabeth Shutler, Gordon Thompson, and Daphne Williams.[1] On January 11, 2017, Defendant Fannie Mae filed a Notice of Removal to the U.S. District Court for the District of Columbia pursuant to Fannie Mae's Charter 12 U.S.C. § 1723(a). Based on the U.S. Supreme Court's ruling in *Lightfoot v. Cendant Mortg. Corp.*, 136 S. Ct. 2536 (2016) issued on January 18, 2017,

---

[1] Plaintiff has not yet effectuated service upon Defendant Gordon Thompson.

Defendant Fannie Mae lost its basis for federal jurisdiction and the case was remanded to this Court. On April 21, 2017, the parties appeared before the Court for a Status Hearing, and the case was continued pending resolution of the instant Motion to Compel Arbitration.

The District of Columbia's Revised Uniform Arbitration Act ("RUAA") governs agreements to arbitrate. D.C. Code § 16-4407(a)(2) provides that, "on the motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement," if the other party opposes the motion, "the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate." D.C. Code § 16-4407(a)(2) (2016). Therefore, the Court has the power to order the parties to arbitration. Additionally, the RUAA sets out the respective authority of the Court and the arbitrator in § 16-4406, and states

> (a) An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract.
> (b) The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate.
> (c) An arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable….

D.C. Code § 16-4406 (2016).

In its Motion to Compel, Defendant seeks to direct the parties to submit to arbitration. D.C. Code § 16-4407(a) provides guidance with regard to a motion to compel or stay arbitration, stating:

On motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement: … [i]f the refusing party opposes the motion, the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate.

In the District of Columbia, "[a] motion to compel arbitration invokes the well established preference for arbitration when the parties have expressed a willingness" to do so. *Friend v. Friend*, 609 A.2d 1137, 1139 (D.C. 1992). When deciding whether to order arbitration, "the trial court must determine as a matter of law whether the parties agreed to arbitrate the particular dispute at issue." *Am. Fed'n of Gov't Emps.*, *Local 3721 v. Dist. Of Columbia*, 563 A.2d 361, 362 (D.C. 1989) (citing *Poire v. Kaplan*, 491 A.2d 529,533 (D.C. 1985)). Additionally, "[w]here there is an arbitration clause in a contract, there is a 'presumption of arbitrability' concerning the dispute at issue." *Id*. (citing *Carter v. Cathedral Ave. Coop.*, 566 A.2d 716, 717 (D.C. 1989)). Furthermore, any "ambiguity as to whether the arbitration provision covers a dispute is resolved in favor of arbitration." *Id.* (citing *Sindler v. Batleman*, 416 A.2d 238, 243 (D.C. 1980*)*.

Accordingly, in evaluating Defendant's Motion to Compel, the Court must first determine whether the parties here have in fact agreed to arbitrate the dispute at issue. Second, the Court must determine whether the dispute falls within the scope of the agreement.

### I.    Whether there is an enforceable agreement to arbitrate

Fannie Mae asserts that both parties have agreed to arbitrate, as evidenced by Plaintiff's continued employment after receiving Defendant's 2015

3

Agreement ("the Agreement"), which requires mandatory arbitration as a prerequisite to going to court, and that Plaintiff, in continuing his employment with Fannie Mae, as well as certifying that he has received the Agreement, has accepted this Agreement. Defendant argues that in continuing their employment Plaintiff consented to the provisions of the 2015 Agreement.

Plaintiff argues that the Arbitration Agreement is not valid as executed, arguing, with no supporting authority, that the agreement is of a type highly disfavored by courts because it did not require a signature by the employee or any understanding of the rights given up by the employee. The Court does not find these arguments persuasive.

Plaintiff was an employee with Fannie Mae from May 2010 through December 2015, and through the effective date of April 20, 2015. Johnson Decl. ¶ 9 The Introductory paragraph of the 2015 Agreement Defendant sent to its employees clearly articulated that "This Arbitration Agreement between you and Fannie Mae provides for final and binding arbitration of employment-related disputes." *Id.* at ¶ 4. The 2015 Agreement further stated its April 20, 2015, effective date, noting in bold, "By continuing to work for Fannie Mae and being employed on [April 20, 2015], you accept this Agreement, which is a condition of your employment." *Id.* Further, Plaintiff responded by clicking "yes" to the certification which stated "Fannie Mae's Arbitration Agreement, dated January 21, 2015, becomes effective on April 20, 2015, for all individuals employed with Fannie Mae as of that date. I hereby certify that I have received Fannie Mae's Arbitration Agreement." *Id.* at ¶¶ 5-6.

4

The Court finds, based on the above undisputed facts that the Plaintiff consented to the provisions of the 2015 Agreement and is bound by the provisions therein.

**II.    Whether the dispute fall within the scope of the agreement**

The next issue before the Court, having found that there is valid agreement to arbitrate, is to determine whether the claims raised by Plaintiff fall within the scope of the Agreement.

Plaintiff's Complaint asserts the following four counts: (Count I) Complaint for Breach of Contract; (Count II) Breach of the Duty of Good Faith and Fair Dealing; (Count III) Tortious Interference with a Business Relationship; and (Count IV) Violation of the D.C. Human Rights Laws. The 2015 Agreement states:

> Except as expressly set out in Sections 5 and 6, you and Fannie Mae agree that any and all controversies, disputes, and/or claims asserted after the Effective Date that directly or indirectly arise out of, or relate to, your employment, terms or conditions of your employment, or termination of employment, whether based on federal, state, and/or local laws ("Covered Claims"), shall be resolved by final and binding arbitration pursuant to this Agreement.

Johnson Decl. ¶ 4. Section 5 of the Agreement provides that either party may, prior to the appointment of an arbitrator, "seek from any court having jurisdiction, preliminary injunctive or other equitable relief necessary to protect the rights of that party," while Section 6 provides that the 2015 Agreement does not apply to claims under the Employment Retirement Income Security Act or to claims that have been specifically excluded by statute from pre-dispute arbitration agreements. None of the exclusions apply to the claims brought by Plaintiff.

Plaintiff's age discrimination claim (Count IV), as well as Plaintiff's common-law claims (Counts I-III) all concern his former employment relationship with Defendant, or the termination of his employment, and thus are within the scope of Defendant's definition of "Covered Claims." The Court thus finds that the dispute does fall within the scope of the arbitration agreement.

Accordingly, it is this **13th day of July, 2017**, hereby:

**ORDERED** that the Defendant's Motion to Compel Arbitration is **GRANTED**; further

**ORDERED** that the status hearing set for Friday, **July 14, 2017** is **VACATED**; and further

**ORDERED** that this matter is **STAYED** pending the outcome of arbitration.

**SO ORDERED**.

William M. Jackson
Associate Judge
(Signed in Chambers)

**Copies to:**

Joseph F. Cunningham
*Counsel for Plaintiff*

Damien G. Steward
*Counsel for Defendant Fannie Mae*

Elizabeth SHutler
21592 Avens Court
Ashburn, VA 20148
*Defendant*

6

Gordon Thompson
11600 American Dream Way
Reston, VA 20190
*Defendant*

Daphne Williams
3900 Wisconsin Avenue
Washington, DC 20016
*Defendant*