**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANIL KANCHARLA, *et al.*,<br><br>       *Plaintiffs*,<br><br>    v.<br><br>FEDERAL NATIONAL MORTGAGE<br>ASSOCIATION,<br><br>       *Defendant.* | Civil Action No. 25-2346 (RDM) |

**<u>MEMORANDUM OPINION</u>**

Plaintiffs, former employees of Defendant Federal National Mortgage Association

("Fannie Mae"), bring this suit asserting discrimination and breach of contract claims concerning

the termination of their employment.  *See generally* Dkt. 1 (Compl.).  Defendant has moved to

dismiss the complaint and to compel arbitration.  *See* Dkt. 11.  Plaintiffs, in addition to opposing

that motion, have moved for an evidentiary hearing on the question whether the parties agreed to

arbitrate this dispute.  *See* Dkt. 15.  Because Plaintiffs have failed to proffer any evidence or to

identify any dispute of material fact regarding arbitrability, the Court will **GRANT** Defendant's

motion to compel arbitration and to dismiss this action and will **DENY** Plaintiffs' motion for a

hearing.

**I. BACKGROUND**

Plaintiffs are 44 former employees of Fannie Mae who allege that they were terminated

*en masse* on a Microsoft Teams call (virtually) attended by over 80 individuals on April 3, 2025.[1]

---

[1] The complaint originally asserted claims on behalf of 66 plaintiffs, but 22 of them voluntarily
dismissed their claims after the suit was filed.  *See* Dkt. 10; Dkt. 17.

Dkt. 1 at 26–27 (Compl. ¶¶ 6–8).  The complaint offers little detail on the purported basis for their terminations, but Plaintiffs allege that they were told that "they were all being terminated for cause for violating Fannie Mae's Charitable Giving program for fraud."  *Id.* at 27 (Compl. ¶ 8).  Every person terminated on the Teams call was of Indian national origin, most were Telugu speakers, "all but a handful were over the age of 40[,] and most [were] over the age of 50."  *Id.* (Compl. ¶ 10).  After exhausting administrative remedies, Plaintiffs brought this suit asserting claims for discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, as well as claims for breach of contract.  *Id.* at 26, 28 (Compl. ¶¶ 1, 18–21).

Defendant moves to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*  *See* Dkt. 11.  Defendant represents that each Plaintiff agreed as part of a 2015 update to Fannie Mae's arbitration agreement to arbitrate "any employment-related disputes."  *Id.* at 2.  Defendant includes several sworn declarations and other exhibits in support of the motion.  Karl Johnson, an associate in Fannie Mae's legal department, attests that on January 21, 2015, Defendant sent an email to all employees advising them of updates to Defendant's arbitration program, which attached a copy of the updated arbitration agreement (the "2015 Agreement") and informed recipients that the updated agreement would automatically take effect on April 20, 2015.  Dkt. 11-1 at 2 (Johnson Decl. ¶ 6).  The email also directed employees to click on a link to a website where they were asked to certify that they had received the 2015 Agreement and "their understanding that 'the Mutual Arbitration Agreement will apply to me if I continue to work at Fannie Mae and am employed by Fannie Mae on April 6, 2015.'"  *Id.* (Johnson Decl. ¶¶ 7–8).  "After answering both questions, the employee was then asked to click a 'confirm' button," which "generated an electronic record of the employee's responses to the

2

two questions." *Id.* at 2–3 (Johnson Decl. ¶ 8).  Defendant attaches as an exhibit to the Johnson Declaration copies of the electronic records of each Plaintiff's confirmation of the 2015 Agreement.[2]  Dkt. 11-1 at 17–104.

In addition, Megan M. Joseph, a director in Fannie Mae's H.R. division, attests that eight of the Plaintiffs signed offer letters accepting internal transfers to new positions within Fannie Mae.  Dkt. 11-2 at 1–2 (Joseph Decl. ¶¶ 3–5).  Along with the Joseph Declaration, Defendant also submits records of the eight offer letters.  Those letters included the 2015 Agreement as an attachment and specified in the body of the letter that the employee would "remain subject to your Arbitration Agreement with Fannie Mae (attached), which requires both you and Fannie Mae to submit claims covered by the Arbitration Agreement to final and binding arbitration." *Id.* at 4–11.  The offer letters also record the electronic acceptances of each of these Plaintiffs.  *Id.*

Plaintiffs opposed the motion to compel arbitration.  *See* Dkt. 13.  In their opposition, they contend that the 2015 Agreement did not constitute an enforceable contract, but do not provide any declarations, exhibits, or other evidence in support of their position.  *See generally id.*  Instead, Plaintiffs requested a hearing "to provide additional evidence of the lack of a meeting of the minds necessary to form a contract by way of live witness testimony," but offered no further details on the proposed witnesses or the nature of the proffered testimony.  *Id.* at 5. After Defendant's motion to compel arbitration was fully briefed, Plaintiffs filed a separate motion reiterating the request for an evidentiary hearing.  *See* Dkt. 15.  Plaintiffs asserted that they "d[id] not believe they answered the two questions" concerning the 2015 Agreement discussed in Defendant's motion—that is, that they affirmed having received the 2015

---

[2] Three of the Plaintiffs registered name changes with Fannie Mae since accepting the 2015 Agreement.  Defendant has also filed a sworn declaration and exhibits recording those name changes.  Dkt. 11-3 at 1 (Daughtry Decl. ¶¶ 3–4); *id.* at 4–6.

Agreement and their understanding that it would apply to those who were employed by Fannie

Mae on April 6, 2015—but instead believed "only that they certified that they had received the

email." *Id.* at 2.  Once again, Plaintiffs did not provide any documentary evidence or proffer of

the testimony they wished to present at a hearing.

Defendant's motion to compel arbitration and Plaintiffs' motion for an evidentiary

hearing are now before the Court.

## II. ANALYSIS

"Section 2 of the [FAA] makes agreements to arbitrate 'valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any

contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (quoting 9 U.S.C. § 2).

"A motion to compel arbitration is decided on a summary judgment standard." *Dist. No. 1, Pac.*

*Coast Dist., Marine Eng'rs' Ben. Ass'n, AFL-CIO v. Liberty Maritime Corp.*, 998 F.3d 449, 456

(D.C. Cir. 2021).  Plaintiffs do not contest that the 2015 Agreement, which applies to "any and

all controversies, disputes, and/or claims asserted after the Effective Date that directly or

indirectly arise out of, or relate to, [Plaintiffs'] . . . termination of employment" subject to

exceptions not relevant here, Dkt. 11-1 at 7, would, if valid, govern this case, which involves

discrimination and breach of contract claims arising out of Plaintiffs' termination, *see* Dkt. 1 at

26 (Compl. ¶¶ 2–5); *see generally* Dkt. 13.  As a result, the only question is whether the 2015

Agreement constitutes an enforceable arbitration agreement.  In addressing that question, the

Court will treat the motion to compel arbitration "as if it were a request for summary disposition

of the issue of whether or not there had been a meeting of the minds on the agreement to

arbitrate." *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008)

(citation modified).  "The party seeking to compel arbitration must present evidence sufficient to

demonstrate an enforceable agreement to arbitrate," at which point "[t]he burden then shifts to [the] plaintiffs to show that there is a genuine issue of material fact as to the making of the agreement." *Ruiz v. Millennium Square Residential Ass'n*, 156 F. Supp. 3d 176, 179 (D.D.C. 2016) (citation modified).

Both parties reference D.C. contract law in discussing whether a valid arbitration agreement existed, *see* Dkt. 11 at 4; Dkt. 13 at 3–4, and the Court will likewise assume that D.C. law governs the question, *see Osvatics v. Lyft, Inc.*, 535 F. Supp. 3d 1, 10 (D.D.C. 2021) ("[W]hen deciding whether the parties agreed to arbitrate a dispute, courts apply ordinary state-law principles that govern the formation of contracts." (citation modified)).  Under D.C. law, a party's intention to agree to a binding contract "can be found from written materials, oral expressions and the actions of the parties." *Duffy v. Duffy*, 881 A.2d 630, 637 (D.C. 2005).

As discussed above, Defendant argues that Plaintiffs manifested an intent to be bound by the 2015 Agreement by, in response to an email describing (and attaching) the 2015 Agreement, certifying that they understood that the Agreement "will apply to me if I continue to work at Fannie Mae."[3]  Dkt. 11 at 3; *see* Dkt. 11-1 at 2 (Johnson Decl. ¶ 8).  Plaintiffs do not dispute the

---

[3] There appears to be one (small) discrepancy concerning the effective date of the 2015 Agreement.  The January 2015 email sent to Fannie Mae employees reports that the 2015 Agreement would go into effect on April 20, 2015, and would apply "to all employees who are employed on that date." Dkt. 11-1 at 6.  The 2015 Agreement itself likewise states that it would become effective April 20, 2015, and would apply to an employee "employed by Fannie Mae on that date (the 'Effective Date')." *Id.* at 7.  That same date was included in an information page and a "Frequently Asked Questions" document posted on the Fannie Mae intranet. *Id.* at 14–15. And the first of the two questions sent to employees asked them to certify that they had received the 2015 Agreement, which "becomes effective on April 20, 2015, for all individuals employed by Fannie Mae as of that date." *E.g.*, *id.* at 17.  The second of the two questions, however, asked the employee to certify their understanding that the arbitration agreement "will apply to me if I continue to work at Fannie Mae and am employed by Fannie Mae on April 6, 2015." *Id.*; *see also id.* at 2 (Johnson Decl. ¶ 8).  Any possible ambiguity as to the precise effective date of the 2015 Agreement—which is not raised in Plaintiffs' briefs—is immaterial to this case, which

factual accuracy of Defendant's description of the email, the 2015 Agreement, or the questions answered by Plaintiffs, let alone support any asserted disagreement with any evidence. *See generally* Dkt. 13. The only specific deficiency in the record identified by Plaintiffs is that Defendant has not provided an "exhibit that depicts the questionnaire that was actually propounded to Plaintiffs." *Id.* at 2. Defendant, however, has submitted a sworn declaration attesting to the text of the questions sent to Plaintiffs, Dkt. 11-1 at 2–3 (Johnson Decl. ¶ 8), and electronic records of each Plaintiff's response which, according to the Johnson Declaration, also include the questions that Plaintiffs answered. *Id.* at 2–4 (Johnson Decl. ¶¶ 8–9, 13–14); *see also id.* at 17–104. Plaintiffs have offered no contradictory evidence of any sort. There is, accordingly, no dispute on the current record that every Plaintiff affirmatively answered the two questions as Defendant described them.

That leaves Plaintiffs' argument that their consent to the 2015 Agreement nonetheless failed to create a binding contract because Plaintiffs only "acknowledge[d] that they received the emails" rather than agreeing to be bound.[4] Dkt. 14 at 3–4. The D.C. Circuit recently addressed a similar question of contract formation in *Apprio, Inc. v. Zaccari*, 104 F.4th 897 (D.C. Cir. 2024). In that case, Zaccari, an employee of Apprio, received through Apprio's H.R. portal a proposed agreement concerning intellectual property rights the preamble of which read "I hereby agree as set forth herein" and that concluded "I acknowledge and agree that the language herein shall be deemed to be approved by all parties hereto." *Id.* at 904–05. After opening the document,

concerns alleged employment actions taken in 2025, a decade after the two dates at issue. *See* Dkt. 1 at 26 (Compl. ¶ 3).

[4] Plaintiffs do not offer any argument that the eight employees who separately acknowledged and accepted the revised arbitration agreement as part of their internal transfers to new positions at Fannie Mae did not thereby assent to arbitrate this case in addition to (and regardless of) the effect of the 2015 email. *See* Dkt. 11 at 3 n.4.

Zaccari clicked a button labeled "Acknowledge," which "was the only option on the computer screen available for closing the window." *Id.* at 905 (citation modified). The D.C. Circuit held that "Zaccari's 'acknowledgment' of the Agreement formed a contract." *Id.* at 907. First, the acknowledgment counted as an electronic signature under the E-Sign Act, 15 U.S.C. § 7001(a). *Id.* And second, and more fundamentally, intentionally clicking the "Acknowledge" button was "necessarily also an admission that he intended to sign the Agreement" and objectively manifested his intent to be bound. *Id.* Although Zaccari argued that merely acknowledging the (proposed) agreement did not amount to assent, the D.C. Circuit rejected that position. As the court explained, "[t]he law is clear that the word 'accept' is not necessary to the formation of a contract" and, if Zaccari had not wished to be bound, he ought to have closed the window rather than "click[ing] the 'Acknowledge' button and manifest[ing] an acceptance that he now clearly regrets." *Id.* at 908.

Plaintiffs' assent to the contract in this case is, if anything, even more unequivocal. They were sent copies of the 2015 Agreement, which stated that they (and Fannie Mae) "agree[d] to resolve any and all claims covered by this Agreement . . . through final and binding arbitration," and that, as current Fannie Mae employees, they "agree[d] that [their] continuing employment on or following the Effective Date, along with Fannie Mae's promise to arbitrate all Covered Claims against you[] constitutes sufficient consideration for this Agreement, and that you and Fannie Mae are bound by its terms." Dkt. 11-1 at 7. They then certified their receipt of the 2015 Agreement and their acknowledgement that the Agreement would apply "if I continue to work at Fannie Mae and am employed by Fannie Mae" on the effective date. *Id.* at 2 (Johnson Decl. ¶ 8). By receiving and being given an opportunity to review a document that, by its plain text, constituted a binding arbitration agreement, and then acknowledging both their receipt of the

2015 Agreement and their understanding of its applicability, each Plaintiff provided an

"'objective manifestation' of his intent to be bound" by the 2015 Agreement. *Zaccari*, 104 F.4th

at 907 (citation modified) (quoting *Dyer v. Bilaal*, 983 A.2d 349, 357 (D.C. 2009)). That

suffices to form a binding arbitration agreement. "If [Plaintiffs] did not wish to be bound by

[D]efendant's contract, [they] should have sought other employment." *Martin v. Citibank, Inc.*,

567 F. Supp. 2d 36, 43 (D.D.C. 2008).

The Court will therefore grant the motion to compel arbitration and, for the same reasons,

deny Plaintiffs' motion for an evidentiary hearing on the issue. An evidentiary hearing or

another separate proceeding (such as a trial) may be needed when there is a genuine dispute of

material fact as to the arbitration agreement. *See Abadi v. Nat'l R.R. Passenger Corp.*, No. 22-

cv-3684, 2024 WL 1344403, at *2 (D.D.C. Mar. 29, 2024) (citing *Jin v. Parsons Corp.*, 966 F.3d

821, 827 (D.C. Cir. 2020)); *see also Samra v. Shaheen Bus. & Inv. Grp., Inc.*, 355 F. Supp. 2d

483, 493 (D.D.C. 2005). As explained above, Plaintiffs, who have declined to submit a single

iota of evidence in support of their position, have not rebutted Defendant's submissions by

"show[ing] that there is a genuine issue of material fact as to the making of the agreement."

*Ruiz*, 156 F. Supp. 3d at 179. Nor have Plaintiffs, in either their opposition to the motion to

compel arbitration or their separate motion for an evidentiary hearing, requested any discovery or

represented that they are unable to "present facts essential to justify [their] opposition" to

Defendant's motion absent "time to obtain affidavits or declarations or to take discovery." Fed.

R. Civ. P. 56(d). On this posture, Plaintiffs' general request to present unspecified witness

testimony is not enough to merit further proceedings.

Finally, having granted Defendant's motion to compel arbitration, the Court will also

grant its motion to dismiss the case. Plaintiffs have not requested that the Court alternatively

stay the case pending arbitration, or otherwise opposed Defendant's motion to dismiss the case in the event that the Court concludes that the claims are properly subject to arbitration. *See* Dkt. 14 at 6; *Gonzales v. Grubhub Holdings, Inc.*, No. 23-cv-1650, 2023 WL 6037126, at *2–3 (D.D.C. Sep. 14, 2023) (granting motion to dismiss after determining the case was subject to arbitration); *Martin*, 567 F. Supp. 2d at 45–46 (same).

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendant's motion to compel arbitration and to dismiss, Dkt. 11, and will **DENY** Plaintiffs' motion for an evidentiary hearing, Dkt. 15.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  July 24, 2026